UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| PEARL LAYNE, | ) |
| | ) |
| Plaintiff, | ) Case. No. 1:18-cv-253-SKL |
| | ) |
| v. | ) |
| | ) |
| WALMART, INC., | ) |
| | ) |
| Defendant, | ) |

## MEMORANDUM OPINION

Before the Court is a motion for summary judgment and supporting memorandum filed by Defendant Walmart, Inc. [Doc. 21 & Doc. 22]. For the reasons stated below, Defendant's motion for summary judgment will be **GRANTED**. Defendant's pending motion *in limine* [Doc. 43] will be **DENIED AS MOOT**.

### I. BACKGROUND

Defendant seeks summary judgment in this "slip and fall" premises liability case. Plaintiff Pearl Layne fell while shopping in a Walmart store in Kimball, Tennessee, on September 22, 2017, at 5:47 p.m. [Coll. Ex. B ("Video") at 1:00:48; *see* Doc. 35 (exhibit photographs manually filed)]. She was walking in the store's main aisle, known as "Action Alley," which contained displays along the center of the aisle [Video at 1:00:48; Doc. 33 at Page ID # 120, ¶ 1 (Pl. Aff.)]. Near the health and beauty aisles abutting the main aisle, she suddenly fell next to a display containing shampoo bottles [Video at 1:00:48; Doc. 33, at 1; Coll. Ex. A.; *see* Doc. 35 (exhibit photographs manually filed)]. Only afterwards did she notice "several puddles" of a "clear, slippery substance" on the floor [Doc. 33 at Page ID # 120, ¶ 1]. According to Plaintiff, "[t]he slippery substance

appeared to be shampoo." [*Id.*]. She further averred that the glare of the bright lights on the white floors made it difficult to see "a clear or light-colored substance" [*id.*].

A video recorded by one of Walmart's security cameras shows "Action Alley" continuously from one hour before Plaintiff's fall to one hour afterwards [Video at 0:00:00– 2:00:02]. The viewer looks down the length of the aisle and can see people passing through with their carts during the hour before Plaintiff's fall [*id.*]. Although one Walmart employee walked through Action Alley, passing somewhat near the location where Plaintiff would later fall [Video at 0:12:48–0:13:04], no one inspected or cleaned Action Alley during that hour [*see generally id.* at 0:00:00-1:00:48].

The fall itself is shown in the video—Plaintiff walked down Action Alley, heading away from the camera from the bottom of the frame to the top, until she suddenly slipped and fell in Action Alley at the extreme top of the frame [*id.* at 1:00:48]. Because of Plaintiff's position at the very top of the frame, the smaller size of the images and the low resolution at that area of the frame, it is impossible to make out any details of the accident, beyond the bare fact that Plaintiff slipped and fell. It is also impossible to discern anything on the floor, and the video yields no clues regarding the source of the slippery substance. And, because Plaintiff fell at the very top of the frame of view, the viewer can glean no information about what is happening even slightly beyond (farther away from the camera than) the location where Plaintiff fell.

Plaintiff filed her complaint in the Marion County Circuit Court on September 24, 2018, asserting a negligence claim and seeking damages for her injuries and other losses, and Defendant removed the case to this Court on October 24, 2018 [Doc. 1]. The deadline to complete discovery was May 5, 2020, and the deadline to file all dispositive motions was May 19, 2020 [Doc. 16 at Page ID # 63–64]. Defendant moved for summary judgment on May 18, 2020 [Doc. 21]. When

Plaintiff failed to timely respond, the Court ordered her to show cause for her failure, noting Plaintiff had missed other deadlines [Doc. 26 at Page ID # 95].

Plaintiff responded to the show cause order on June 16, 2020, representing, in relevant part, that: (1) her counsel had not received notice that Defendant had filed a motion for summary judgment because she had inadvertently failed to update her email address with the Court; (2) her counsel's electronic calendar was accidentally deleted, resulting in her being unaware of the deadline she calendared for completion of discovery; and (3) Plaintiff's medical treatment was ongoing and, for that reason, she intended to request a new trial date and other unspecified modifications of the scheduling order [Doc. 28 at Page ID # 99–100].

Plaintiff also moved to amend the scheduling order on June 16 [Doc. 29]. In that motion, Plaintiff represented that the matter was not ready to proceed to trial because "Plaintiff has not yet been released from medical treatment" and "has not been able to depose her treating doctors or obtain a permanent impairment rating" [*Id.* at Page ID # 102]. Also on the same day, Plaintiff moved for an extension of time to respond to Defendant's motion for summary judgment, citing some of the same reasons she gave in her response to the show cause order but no additional reasons [*see generally* Doc. 30]. The Court granted a seven-day extension for Plaintiff to respond to the summary judgment motion [Doc. 31], and, on that deadline—June 24, 2020—Plaintiff filed a response to the motion and a statement of undisputed facts [Doc. 36 & Doc. 34]. Plaintiff also presented the following evidence: her own affidavit, photographs taken of the floor after her accident, and a video showing the accident [Doc. 33; *see* Doc. 35 (notice of manual filing of photographs and video)]. Defendant filed a response to Plaintiff's statement of undisputed facts [Doc. 41] and a reply to Plaintiff's response to Defendant's motion for summary judgment [Doc. 42]. Plaintiff then filed a supplemental response to the motion for summary judgment [Doc. 49],

3

to which Defendant replied [Doc. 50].  Defendant's motion for summary judgment is now ripe for the Court's review.

## II.     STANDARD OF LAW

As a matter of procedural law, Federal Rule of Civil Procedure 56 provides the standard for summary judgment in a diversity case.  *Biegas v. Quickway Carriers*, 573 F.3d 365, 374 (6th Cir. 2009).  Under Rule 56, summary judgment is mandatory where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one that *matters*—i.e., a fact that, if found to be true, might "affect the outcome" of the litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The applicable substantive law, state law in a diversity case, provides the frame of reference to determine which facts are material.  *Id.*  A fact is therefore material if it relates to a legal element of Plaintiffs' state law tort claim.

A "genuine" dispute exists with respect to a material fact when the evidence would enable a reasonable jury to find for the non-moving party.  *Id.*; *Jones v. Sandusky Cnty., Ohio*, 541 F. App'x 653, 659 (6th Cir. 2013); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  In determining whether a dispute is "genuine," the court cannot weigh the evidence or determine the truth of any matter in dispute.  *Anderson*, 477 U.S. at 249.  Instead, the court must view the facts and all inferences that can be drawn from those facts in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports*, 253 F.3d at 907.

In ruling on a motion for summary judgment, the court may consider any affidavits along with any pleadings, depositions, answers to interrogatories, or admissions.  *Pennycuff v. Fentress Cnty. Bd. of Educ.*, 404 F.3d 447, 450 (6th Cir. 2005).  The moving party bears the initial burden

of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jones*, 541 F. App'x at 659. The movant must support its assertion that a fact is not in dispute by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex*, 477 U.S. at 323. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *Nat'l Satellite Sports*, 253 F.3d at 907.

## III. ANALYSIS

As a threshold matter, the Court notes that, in her response to Defendant's motion for summary judgment, Plaintiff requests that the Court grant her additional time to complete discovery and allow her to "supplement her response" to Defendant's summary judgment motion "after discovery has been completed" [Doc. 36 at Page ID # 129]. In a supplemental response she filed on July 23, 2020, Plaintiff states that she needs further discovery "for the issue of liability . . . , including, but not limited to, the issue of common occurrence or pattern of conduct, to determine the applicable factors as set forth in Allison v. Blount Nat'l Bank, *supra*, the defendant's policies and procedures for cleaning and inspections, etc." [Doc. 49 at Page ID # 205]. She further states that she "needs to conduct discovery on the issue of liability and continues her request for additional time to conduct discovery to further develop the proof in this case." [*Id.* at Page ID # 206].

These are not Plaintiff's first requests to reopen discovery, for which the deadline was May 5, 2020 [Doc. 16 at Page ID # 63]. As detailed above, Plaintiff moved to amend the scheduling

5

order on June 16, 2020, citing the need to depose her treating doctors or obtain a permanent impairment rating [Doc. 29 at Page ID # 102].  Notably, however, she did not specifically request to reopen discovery or even identify a need to engage in additional *liability*-related discovery. Similarly, neither her response to the Court's show cause order, with the attached affidavit of Plaintiff's counsel [Doc. 39 & Doc. 39-1] nor her motion for extension of time to respond to Defendant's motion for summary judgment [Doc. 30] mention a need to reopen discovery.

Federal Rule of Civil Procedure 56(d) provides the appropriate avenue by which a party may move for additional discovery in order to respond to an opposing party's motion for summary judgment:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

The affidavit or declaration "must indicate to the [trial] court the party's need for discovery, what material facts the party hopes to uncover, and why the party has not previously discovered the information." *Wilson v. Ebony Constr. LLC*, No. 2:17-CV-1071, 2018 WL 4743063, at *3 (S.D. Ohio Oct. 2, 2018) (internal quotation marks and citations omitted).  A court may deny a request for discovery pursuant to Rule 56 when the party "makes only general and conclusory statements [in its affidavit] regarding the need for more discovery and does not show how an extension of time would have allowed information related to the truth or falsity of the [claim] to be discovered." *Snow v. Kemp*, No. 10-2363-STA-CGC, 2011 WL 345864, at *1 (W.D. Tenn. Feb. 2, 2011) (alterations in original) (quoting *Ironside v. Simi Valley Hosp.*, 188 F.3d 350, 354 (6th Cir. 1999)).

6

In this case, Plaintiff has not filed the requisite affidavit or declaration in support of her request for more discovery. Nor has she otherwise presented particularized reasons for the need, identified the material facts she hopes to uncover, or explained why she was unable to obtain the desired discovery before now. Plaintiff finally gives some explanation in her supplemental response, filed July 23, 2020, of the additional discovery she requests [Doc. 49 at Page ID # 205]. She states that she needs additional discovery "for the issue of liability . . . , including, but not limited to, the issue of common occurrence or pattern of conduct, to determine the applicable factors as set forth in Allison v. Blount Nat'l Bank, *supra*, the defendant's policies and procedures for cleaning and inspections, etc." [*Id.*]. However, this is too little too late. Not only did Plaintiff first offer this representation sixty-six days after Defendant filed its motion for summary judgment, but, even if it were timely, it would still fail to satisfy Rule 56(d)'s requirements. Besides the fact that Plaintiff offers this explanation by way of brief rather than by affidavit or declaration, as required by Rule 56(d), she is not sufficiently specific about the need for additional discovery and the facts she hopes to discover, and she gives no explanation for why she was unable to obtain this discovery before the deadline lapsed. *See Scadden v. Werner*, 677 F. App'x 996, 1000 (6th Cir. 2017) (noting that granting a Rule 56(d) motion is in the court's discretion, that failure to comply with Rule 56(d) by filing an affidavit or declaration is sufficient reason to deny further discovery and that, furthermore, party who sought to reopen the lapsed discovery deadline should have explained why he had not completed discovery before deadline passed). For these reasons, the Court will not reopen discovery on the issue of liability to allow Plaintiff to further supplement her response to Defendant's motion for summary judgment. The Court now turns to the merits of Defendant's motion.

7

### A. Applicable Law

Under Tennessee law, a claim for negligence requires proof of: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; (3) an injury to the plaintiff; (4) causation in fact; and (5) proximate, or legal, causation. *Morris v. Wal-Mart Stores, Inc.*, 330 F.3d 854, 858 (6th Cir. 2003).

While business owners "are not insurers of their customers' safety," *Psillas v. Home Depot, U.S.A., Inc.*, 66 S.W.3d 860, 864 (Tenn. Ct. App. 2001), an owner owes a duty to its patrons to maintain its premises in a reasonably safe condition. *Sims v. Memphis Processors, Inc.*, 926 F.2d 524, 527 (6th Cir. 1991); *McClung v. Wal-Mart Stores, Inc.*, 270 F.3d 1007, 1012 (6th Cir. 2001). "The duty includes the responsibility to remove or warn against latent or hidden dangerous conditions on the premises of which one was aware or should have been aware through the exercise of reasonable diligence." *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998) (citations omitted). This duty adheres, however, only when the risk from such a condition or defect is unreasonable. *Id.*

In a premises liability case such as this one, a plaintiff must prove either that the owner or operator "created" a dangerous condition or had actual or constructive notice of it. *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004). "[C]onstructive notice can be established by proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition." *Id.* (citing *Simmons v. Sears, Roebuck & Co.,* 713 S.W.2d 640, 641 (Tenn. 1986)). "In determining whether or not the proprietor had constructive notice of the danger . . . , [o]ne must take [also] into consideration the nature of the business, its size, the number of patrons, the nature of the danger, [and] its location along with the foreseeable consequences." *Paradiso v. Kroger Co.*, 499 S.W.2d 78, 79 (Tenn. Ct.

8

App. 1973). An alternative way to establish constructive notice, called the "common occurrence" theory, is to show that a business owner "had constructive notice of the presence of a dangerous condition by showing a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence . . . such that its presence was reasonably foreseeable to the premises owner. *Id.* at 765–66; *see, e.g.*, *Benn v. Pub. Bldg. Auth. of Knox Cty.*, No. E200901083COAR3CV, 2010 WL 2593932, at *5 (Tenn. Ct. App. June 28, 2010).

### B. Application

Defendant contends that it is entitled to summary judgment on Plaintiff's negligence claim because Plaintiff has presented no evidence that it created the spill, that it had actual notice of the spill, or that it had constructive notice of the spill [Doc. 21 at Page ID # 81]. Defendant presents no evidence of its own in support of its motion.[1] Plaintiff responds that her claim should survive summary judgment because "the undisputed facts establish that Defendant created the condition" and that Defendant "should have known the slippery substance was on the floor prior to Plaintiff's fall" [Doc. 36 at Page ID # 128].

Because Plaintiff does not address Defendant's argument that she has presented no evidence that Defendant had actual notice that there was a slippery substance on the floor, and because the Court has reviewed the record and found no such evidence, the Court will **GRANT** summary judgment to Defendant as to the actual-notice theory of premises liability. The Court now considers whether a genuine dispute exists as to Plaintiff's creation and constructive-notice theories.

---

[1] A party moving for summary judgment is not required to present any evidence in support of its motion. *See Celotex*, 477 U.S. at 325 ("The burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."

9

### 1. Creation

Defendant asserts that there is no evidence in the record suggesting that it created a dangerous condition [Doc. 21 at Page ID # 81]. Plaintiff responds that Defendant created the dangerous condition by a combination of "maintaining numerous distracting displays" along Action Alley, by displaying shampoo—a slippery substance—there, by failing to have any employees inspect or clean there for more than an hour, and by shining bright ceiling lights on a white floor, making it difficult to see any clear or light-colored substances on the floor [Doc. 36 at Page ID # 128].

Tennessee law does not permit business owners to be charged with notice of every dangerous condition to which their actions might have contributed. Instead, an owner or operator is considered to have created only those conditions for which it is "directly responsible." *Friar v. Kroger Co.*, No. 03A01-9710-CV-00470, 1998 WL 170140, at *2 (Tenn. Ct. App. Apr. 14, 1998); *see also Blair*, 130 S.W.3d at 766 (citing the "firmly established" principle "that a premises owner's duty to remedy a condition not directly created by the owner, is based on that owner's actual or constructive knowledge of the existence of the condition"). In the context of a slip-and-fall case, the creation theory has been applied when there is some evidence that the defendant's employee personally spilled the slippery substance that the plaintiff slipped on. *See, e.g.*, *Keene v. Cracker Barrel Old Country Store, Inc.*, 853 S.W.2d 501, 504 (Tenn. Ct. App. 1992).

In *Blair*, the Tennessee Supreme Court rejected a line of cases that held the creation theory to apply when a business owner indirectly causes a dangerous condition. 130 S.W.3d at 765. For example, in *Hale v. Blue Boar Cafeteria Co.*, the Tennessee Court of Appeals allowed a slip-and-fall case to go to a jury on a creation theory because it was foreseeable that customers would spill drinks on the tile floor in the beverage self-service area, thereby rendering the wet tiles dangerous.

10

1980 WL 150173, at *5 (Tenn. Ct. App. Feb. 21, 1980). Abrogating *Hale* and similar cases, the Tennessee Supreme Court explained in *Blair* that the concepts of "creation" and "notice" require something more than, and distinct from, mere foreseeability and declared that a plaintiff advancing a creation theory must show the dangerous condition was "directly created" by the owner. *Id.* at 765–66. The *Blair* court further noted that its holding would apply no matter whether the condition was "caused by the owner's method of operation, by a third party, or by natural forces." *Id.* at 764, 766.

The Court concludes that the facts presented here, even taken in the light most favorable to Plaintiff, do not create a genuine dispute of material fact as to whether Defendant created a dangerous condition such that it would be liable for injuries arising from it. Plaintiff has produced no evidence that a Walmart employee personally spilled or caused the substance to leak onto the floor. To the extent that Plaintiff argues that Defendant created a combination of a busy aisle with numerous displays, a white floor, and bright, glaring lights that was itself a dangerous condition [*see* Doc. 36 at Page ID # 128], she has presented no case law to support such a broad interpretation of the term "dangerous," and the Court finds it unreasonable and unsupported by evidence.

The most that Plaintiff can reasonably argue is that Defendant created the *potential* for a dangerous condition, and that the dangerous condition was foreseeable. But—as the Tennessee Supreme Court explained in *Blair*—that is not enough for liability under a creation theory. Plaintiff has presented no evidence that the dangerous condition—a slippery floor—would have existed but for an intervening spill or leak. While it may have been foreseeable that if a light-colored substance spilled onto the white floor it would be difficult to see under the glaring lights, *Blair* counsels that Plaintiff must show something more than foreseeability to establish that

11

Defendant created the slip hazard. *See Blair*, 130 S.W.3d at 765. For these reasons, the Court will **GRANT** summary judgment to Defendant as to Plaintiff's creation theory of liability.

### 2. Constructive Notice

Defendant next contends that Plaintiff cannot establish a *prima facie* negligence claim under a constructive-notice theory because she "has no evidence of where the alleged dangerous condition came from or how long it was on the floor before her accident" and "Tennessee courts consistently dismiss constructive notice premises liability claims where the plaintiff does not present evidence establishing how long the allege dangerous condition existed before the plaintiff's accident" [Doc. 21 at Page ID # 81]. Plaintiff does not dispute Defendant's assessment of Tennessee law, beyond noting that "Plaintiff is not required to prove exactly how long a spill has been present in order to prevail under the constructive notice theory of premises liability" and that circumstantial evidence can establish a genuine dispute [Doc. 49 at Page ID # 202–03].

Both parties are correct. "To establish constructive notice requires some material competent evidence from which it can be logically inferred the proprietor, by the exercise of ordinary care, would have or should have discovered the dangerous condition." *Paradiso*, 499 S.W.2d at 80; *see also id.* (noting, as an example, that the jury in *Cherry v. Sampson*, 232 S.W.2d 610 (Tenn. Ct. App. 1950), was entitled to make "a fair inference," from the accumulation of trash and dirt behind a loose molding, that it had been loose "for sufficient time that by the exercise of ordinary care the proprietor should have discovered the dangerous condition"). In contrast, when there is no evidence of how a dangerous condition occurred or how long such condition existed, "any conclusion of the trier of fact would have to be based on conjecture and speculation which would violate the cardinal rule that such conclusion must be supported by evidence." *Id.*; *see Ogle v. Winn-Dixie Greenville, Inc.*, 919 S.W.2d 45, 47 (Tenn. Ct. App. 1995) ("When there is a

12

complete absence of proof as to when and how the dangerous condition came about, it would be improper to permit the jury to speculate on these vital elements.").

Plaintiff appears to argue that the video, which shows the hour preceding her fall, shows that the spill of the slippery substance must have occurred at least an hour before her fall because no such spill is shown on the video [Doc. 49 at Page ID # 203–04]. The argument proceeds as follows: (1) If the spill had occurred during that hour, it would have been captured on the video. (2) It was not. (3) Therefore, the spill must have occurred before the time period captured by the video (i.e., more than one hour before Plaintiff's fall). (4) A jury could find that, in the exercise of due diligence, Defendant's employees should have become aware of the spill or the slippery condition of the floor that remained in that condition for more than an hour.

In pressing this argument, Plaintiff relies most heavily on *Corley v. Wal-mart Stores East, LP*, 637 F. App'x 201 (6th Cir. 2016), a case with similar facts. In *Corley*, the United States Court of Appeals for the Sixth Circuit affirmed the district court's denial of a store owner's renewed motion for judgment as a matter of law as to constructive notice after a jury found for the plaintiff. *Id.* at 210–11, 213. In that case, as in the instant case, there was a video that started an hour before and continued until an hour after the plaintiff slipped. In each case, the spilled liquid (water in *Corley*, perhaps shampoo here) was not visible on the video. Each video showed an Walmart employee pass, before the fall, near the location where the plaintiff eventually fell. *Compare Corley*, 637 F. App'x at 210, *with* [Video at 0:12:48–0:13:04]. And, in neither case did the video show any puddles or any evidence that a spill or leak of any kind happened during the recorded time period. *See Corley*, 637 F. App'x at 212.

The district court in *Corley* determined that there were two conclusions that a reasonable juror could draw after viewing the video: "one, that the spill occurred in the [time] after the

13

employee walked by or, two, the spill must have occurred before the period of time captured on the tape because there was no evidence on the tape to implicate anyone for the spill." *Banta v. Wal-Mart Stores, East, LP*, No. 1:16-cv-436, 2018 WL 1702144, at *3 (E.D. Tenn. Apr. 6, 2018) (interpreting *Corley*). Crucially, the video in *Corley* constituted sufficient evidence to create a genuine issue of material fact for the jury as to when the spill occurred because the Sixth Circuit could not

> conclude as matter of law that the video quality [was] so poor that a reasonable factfinder would be unable to conclude that none of the passing customers were responsible for the spill. And if the jury found that none of the passing customers were responsible, a reasonable jury could have found that the puddle was pre-existing and was present when [the employee] walked by, and Wal-mart therefore should have known about it.

*Corley*, 637 F. App'x at 213.

The video in *Corley* and the video in this case share much in common. However, in the instant case, the Court must reach the opposite result from that of the *Corley* court because no reasonable factfinder, upon viewing the video, would be able to rule out *any* possible causes or timelines during which the spill could have occurred. Put differently, the video in this case offers no evidence that is at all probative of how or when the spill occurred. Much of the frame of the video is fairly clear; however, Plaintiff's fall occurs at the extreme top of the frame, and even her image is blurry. Nothing is visible at any point even slightly farther from the camera down Action Alley. As a result, unlike in *Corley*, a reasonable juror could not make the negative inference that because no spill event is visible on the video during the hour culminating in Plaintiff's fall, a spill event more likely than not happened before that hour. For that matter, a reasonable juror could not make *any* inference about when the slippery substance first came to be on the floor. There is simply no evidence of when the spill occurred. It could have occurred more than an hour before Plaintiff fell, within moments before she fell, or anywhere in between, and there is no evidence to

14

suggest any particular timeline is more likely than any other possible scenario. Thus, no juror could conclude, without impermissible speculation, that the floor was slippery for a sufficient amount of time that Defendant should have discovered the dangerous condition through the exercise of reasonable diligence. *See Rice*, 979 S.W.2d at 308.

Finally, Plaintiff notes in her supplemental response that constructive notice may also be shown through a common occurrence theory [Doc. 49 at Page ID # 205]. However, she does not present any evidence in support of a common occurrence theory [*see id.*], and there is none in the record. Rather, as discussed above, Plaintiff requests additional discovery on this issue. Because the Court has already determined that Rule 56(d) dictates that it should deny Plaintiff's request for additional lability-related discovery, that alternative method of showing constructive notice is foreclosed to Plaintiff.[2]

In sum, Plaintiff has not presented evidence to create a genuine issue of material fact as to whether Defendant was on constructive notice of a dangerous condition. Accordingly, the Court will **GRANT** summary judgment to Defendant as to constructive notice, Plaintiff's third and final theory of liability.

---

[2] The Court need not address Defendant's argument that Plaintiff has waived any claim based on a common occurrence theory by not including allegations relating to this theory in her complaint [*see* Doc. 50 at Page ID # 226].

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment [Doc. 21] is hereby **GRANTED**, Defendant's motion *in limine* [Doc. 43] is **DENIED AS MOOT**, and this action will be **DISMISSED WITH PREJUDICE**. A separate judgment will enter.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE